1   ELAINE K. KIM (SBN 242066)
       ekk@msk.com
2   MITCHELL SILBERBERG & KNUPP LLP
    2049 Century Park East, 18th Floor
3   Los Angeles, CA 90067
    Telephone: (310) 312-2000
4   Facsimile: (310) 312-3100

5   Attorneys for Defendant
    The Walt Disney Company

6

7

8                  UNITED STATES DISTRICT COURT

9         CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11  David A. Fisher,                    CASE NO. 2:21-cv-05839-CBM (KSx)

12          Plaintiff,                   Honorable Consuelo B. Marshall

13          v.                           **NOTICE OF MOTION AND
                                         MOTION OF DEFENDANT THE
14  Angela Nissel, E. Brian Dobbins,    WALT DISNEY COMPANY TO
    Kenya Barris, ABC Studios, The Walt DISMISS PLAINTIFF'S FIRST
15  Disney Company, a Delaware          AMENDED COMPLAINT
    Corporation, and Parent company of  WITHOUT LEAVE TO AMEND
16  Walt Disney, Walt Disney Television PURSUANT TO FEDERAL RULE
    and ABC Television Network, Inc;    OF CIVIL PROCEDURE 12(B)(6)
17  Does 1 thru 25, Inclusive,          AND 28 U.S.C. § 1915(E)(2)(B);**

18          Defendants.                  **MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT**
19
                                         [Request for Judicial Notice;
20                                       Declaration of Celeste de los Santos;
                                         Notice of Lodging and Exhibit; and
21                                       [Proposed] Order Filed Concurrently
                                         Herewith]
22
                                         Date:        January 25, 2022
23                                       Time:        10:00 a.m.
                                         Courtroom:   8B
24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

## <u>NOTICE OF MOTION AND MOTION</u>

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 25, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Consuelo B. Marshall in Courtroom 8B, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant The Walt Disney Company ("TWDC") will and hereby does move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1915(e)(2)(B)(i)-(ii), for an Order dismissing Plaintiff David A. Fisher's First Amended Complaint for Infringement (Dkt. 31) as to all Defendants, without leave to amend.

This Motion is made on the grounds that the First Amended Complaint ("FAC"), like the Complaint, fails to (and cannot) state a claim for copyright infringement under Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii) against TWDC or any other Defendant, and is frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) in that Plaintiff's claim lacks any arguable basis in law or in fact.

Plaintiff claims that the television series *mixed-ish* infringes his purported works—five episodes of a series titled "MIXED." The FAC fails to state a claim and should be dismissed for the following reasons:

- Plaintiff's claim for infringement of "MIXED" Episodes 2 through 5 fails because Plaintiff has not alleged facts demonstrating that he owns valid copyright registrations for these works. The judicially noticeable records of the U.S. Copyright Office establish that Plaintiff did not obtain copyright registrations for Episodes 2 through 5 prior to filing this action.

- Plaintiff's claim for infringement of "MIXED" Episode 1 fails, including because Plaintiff has failed, once again, to allege facts plausibly showing that *mixed-ish* is substantially similar in protected expression to "MIXED" Episode 1. Moreover, the works themselves, which are judicially noticeable

1   and incorporated by reference into the FAC, demonstrate that *mixed-ish* is

2   not substantially similar to "MIXED" Episode 1 as a matter of law.

3   These defects apply to Plaintiff's claims for copyright infringement against

4   all Defendants, including those not yet served. Plaintiff has had a full and fair

5   opportunity to try to remedy these defects and to state a claim. Plaintiff has failed

6   to (and cannot) do so. Therefore, the FAC should be dismissed as to all Defendants

7   without leave to amend. Furthermore, because Plaintiff's claims lack any arguable

8   basis in law or in fact, the Court should certify in writing that any appeal would not

9   be taken in good faith under 28 U.S.C. § 1915(a)(3).

10   This Motion is based upon this Notice of Motion and Memorandum of

11   Points and Authorities; the concurrently filed Request for Judicial Notice and

12   exhibit, Declaration of Celeste de los Santos, and Notice of Lodging; TWDC's

13   previously filed Request for Judicial Notice and exhibits and declarations thereto;

14   all pleadings and other records on file in this action; any other matters that may be

15   judicially noticed; and such further evidence and arguments as may be presented at

16   or before the hearing on this Motion.

17   This Motion is made following the conference between Plaintiff and counsel

18   for Defendant TWDC pursuant to L.R. 7-3, which took place on December 7,

19   2021.

20

21   DATED: December 16, 2021          MITCHELL SILBERBERG & KNUPP LLP

22                                     By:  */s/ Elaine K. Kim*
23                                          Elaine K. Kim
                                            Attorneys for Defendant
24                                          The Walt Disney Company

25

26

27

28

1

# **TABLE OF CONTENTS**

2

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .........................................11

I.   INTRODUCTION ..............................................................................................11

II.  PROCEDURAL AND FACTUAL BACKGROUND ...................................12

    A.   Plaintiff's First Action and Initial Complaint in This Action.............12

    B.   The Court's Order Granting TWDC's Motion to Dismiss .................12

    C.   Plaintiff's First Amended Complaint for Infringement .....................13

    D.   The Works at Issue ...............................................................................16

        1.   "MIXED" Episode 1 ...............................................................16
        2.   mixed-ish ...................................................................................17

III. LEGAL STANDARDS .....................................................................................18

IV.  PLAINTIFF'S CLAIM BASED ON "MIXED" EPISODES 2-5
    SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND .................19

V.   PLAINTIFF'S CLAIM BASED ON "MIXED" EPISODE 1 SHOULD
    BE DISMISSED WITHOUT LEAVE TO AMEND....................................21

    A.   Plaintiff Has Again Failed to Plead Substantial Similarity ...............21

    B.   Plaintiff's Claim Should Be Dismissed Without Leave to Amend ....27

    C.   Plaintiff Has Again Failed to Plead Copying by TWDC....................34

VI.  THE FACT SHOULD BE DISMISSED AS TO ALL DEFENDANTS
    WITHOUT LEAVE TO AMEND ..................................................................34

VII. THE COURT SHOULD CERTIFY THAT ANY APPEAL MAY NOT
    BE TAKEN IN FORMA PAUPERIS .........................................................35

VIII. CONCLUSION ...............................................................................................35

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdullah v. Walt Disney Co.*,
   2016 WL 5380930 (C.D. Cal. Mar. 14, 2016),
   *aff'd*, 714 F. App'x 758 (9th Cir. 2018) ........................................................23, 29

*Alfred v. Walt Disney Co.*,
   821 F. App'x 727 (2020) ...........................................................................29

*Arnold v. Loancare, LLC*,
   2021 WL 325664, at *8 (E.D. Cal. Feb. 1, 2021),
   *report and recommendation adopted*, 2021 WL 1089885 (E.D.
   Cal. Mar. 22, 2021) ................................................................................35

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................18, 22

*Astor-White v. Strong*,
   2019 WL 3017684 (C.D. Cal. June 14, 2019),
   *aff'd*, 817 F. App'x 502 (9th Cir. 2020) ...............................................29

*Basile v. Sony Pictures Entm't Inc.*,
   2014 WL 12521344 (C.D. Cal. Aug. 19, 2014),
   *aff'd*, 678 F. App'x 473 (9th Cir. 2017) .................................................29

*Benay v. Warner Bros. Entm't, Inc.*,
   607 F.3d 620 (9th Cir. 2010),
   *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d
   1051 (9th Cir. 2020) ...................................................................30, 31, 32

*Carlini v. Paramount Pictures Corp.*,
   2021 WL 911684 (C.D. Cal. Feb. 2, 2021) .......................................33

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) ...............................................................32

*Christianson v. W. Pub. Co.*,
   149 F.2d 202 (9th Cir. 1945) ...............................................................28

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

1

## TABLE OF AUTHORITIES
(continued)

2

3

**Page(s)**

4
*Edwards v. Cinelou Films, LLC*,
    2016 WL 9686986 (C.D. Cal. June 22, 2016),
5
    *aff'd*, 696 F. App'x 270 (9th Cir. 2017) ............................................................. 29

6
*Esplanade Prods., Inc. v. Walt Disney Co.*,
7
    2017 WL 5635027 (C.D. Cal. Nov. 8, 2017),
    *aff'd*, 768 F. App'x 732 (9th Cir. 2019) ...................................................... 23, 29
8

9
*Evans v. McCoy-Harris*,
    2019 WL 1002512 (C.D. Cal. Jan. 4, 2019) .................................................. 24
10

11
*Evans v. NBCUniversal Media, LLC*,
    2021 WL 4513624 (C.D. Cal. July 23, 2021) ................................................. 34
12

13
*Fazio v. Washington Mut. Bank, F.A.*,
    713 F. App'x 671 (9th Cir. 2018) .................................................................... 34

14
*Fillmore v. Blumhouse Prods., LLC*,
15
    2017 WL 4708018 (C.D. Cal. July 7, 2017),
    *aff'd*, 771 F. App'x 756 (9th Cir. 2019) ........................................................... 29
16

17
*Fisher v. Nissel*,
    No. 2:20-cv-02088-CBM ................................................................................ 12
18

19
*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019) ..................................................................................... 21
20

21
*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006),
22
    *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d
    1051 (9th Cir. 2020) ........................................................................... 30, 31, 33
23

24
*Gadh v. Spiegel*,
    2014 WL 1778950 (C.D. Cal. Apr. 2, 2014) ................................................. 28
25

26
*Heusey v. Emmerich*,
    2015 WL 12765115 (C.D. Cal. Apr. 9, 2015),
27
    *aff'd*, 692 F. App'x 928 (9th Cir. 2017) .................................................... 29, 30

28

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*in Dunn v. Castro*,
   621 F.3d 1196 (9th Cir. 2010) ................................................................. 19

*Izmo, Inc. v. Roadster, Inc.*,
   2019 WL 2359228 (N.D. Cal. June 4, 2019) ......................................... 21

*Levi v. Strong*,
   2019 WL 3293240 (C.D. Cal. May 9, 2019),
   *aff'd*, 812 F. App'x 713 (9th Cir. 2020) ............................................... 23

*Malibu Media, LLC v. Doe*,
   2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019) ......................................... 21

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
   922 F.3d 946 (9th Cir. 2019) .................................................................. 20

*Marcus v. ABC Signature Studios, Inc.*,
   279 F. Supp. 3d 1056 (C.D. Cal. 2017) ........................................... 32, 33

*Masterson v. Walt Disney Co.*,
   2019 WL 2879877 (C.D. Cal. May 8, 2019),
   *aff'd*, 821 F. App'x 779 (9th Cir. 2020) ............................................... 28

*Masterson v. Walt Disney Co.*,
   821 F. App'x 779 (9th Cir. 2020) ...................................................... 24, 29

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010) .................................................................. 31

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) .................................................................. 28

*Montgomery v. Kennerly*,
   2013 WL 1209935 (D. Mont. Mar. 4, 2013), *report and
   recommendation adopted*, 2013 WL 1210562 (D. Mont. Mar. 25,
   2013) ........................................................................................................ 35

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ................................................................................ 19

1

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Olson v. Nat'l Broad. Co.*,
   855 F.2d 1446 (9th Cir. 1988) ....................................................................32, 33

*Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) ...............................................................................23

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018),
   *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d
   1051 (9th Cir. 2020) .............................................................22, 24, 25, 28, 34

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984) ............................................................................18

*Rosado v. Roman*,
   2017 WL 3473177 (D. Or. Aug. 11, 2017) .......................................................19

*Schkeiban v. Cameron*,
   2012 WL 5636281 (C.D. Cal. Oct. 4, 2012),
   *aff'd*, 566 F. App'x 616 (9th Cir. 2014) ...........................................................29

*Shame On You Prods., Inc. v. Elizabeth Banks*,
   120 F. Supp. 3d 1123 (C.D. Cal. 2015),
   *aff'd*, 690 F. App'x 519 (9th Cir. 2017) ...............................................23, 29, 33

*Silas v. Home Box Off., Inc.*,
   201 F. Supp. 3d 1158 (C.D. Cal. 2016),
   *aff'd*, 713 F. App'x 626 (9th Cir. 2018) ...............................................29, 30, 31

*Silverton v. Dep't of Treasury of U.S. of Am.*,
   644 F.2d 1341 (9th Cir. 1981) ..........................................................................34

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir.),
   *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ..........19, 23

*Suess v. Obama*,
   2017 WL 1371289 (C.D. Cal. Mar. 10, 2017) ..................................................19

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002

8

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

1

**TABLE OF AUTHORITIES**
(continued)

2

3
**Page(s)**

*Tanksley v. Daniels*,
    902 F.3d 165 (3d Cir. 2018) ............................................................... 31

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .......................................................................... 19

*Thomas v. Walt Disney Co.*,
    2008 WL 425647 (N.D. Cal. Feb. 14, 2008),
    *aff'd*, 337 F. App'x 694 (9th Cir. 2009) ............................................. 29

*UAB "Planner 5D" v. Facebook, Inc.*,
    2019 WL 6219223 (N.D. Cal. Nov. 21, 2019)..................................... 21

*Ukiru v. Fed. Home Loan Mortg. Corp.*,
    602 F. App'x 395 (9th Cir. 2015)........................................................ 35

*Van v. Cameron*,
    2011 WL 13121346 (S.D. Cal. Sept. 26, 2011),
    *aff'd*, 566 F. App'x 615 (9th Cir. 2014) ............................................. 29

*Washington v. ViacomCBS, Inc*,
    2021 WL 2640105 (C.D. Cal. May 21, 2021).........................22, 24, 25

*Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*,
    2019 WL 9050859 (C.D. Cal. Aug. 5, 2019) ...................................... 21

*White v. Twentieth Century Fox Corp.*,
    2012 WL 13008330 (C.D. Cal. Apr. 11, 2012),
    *aff'd*, 572 F. App'x 475 (9th Cir. 2014) ............................................. 29

*Wild v. NBC Universal, Inc.*,
    2011 WL 13272427 (C.D. Cal. June 28, 2011),
    *aff'd*, 513 F. App'x 640 (9th Cir. 2013) ............................................. 29

*Wild v. NBC Universal, Inc.*,
    513 F. App'x 640 (9th Cir. 2013)........................................................ 23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002

9

# TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

### STATUTES

17 U.S.C.
 § 410 .................................................................................................. 20
 § 411(a) ...................................................................................... 20, 21

28 U.S.C.
 § 1915(a)(3) ................................................................................ 12, 35
 § 1915(e)(2)(B) ........................................................................... 13, 19
 § 1915(e)(2)(B)(ii) ............................................................................ 19

### OTHER AUTHORITIES

Fed. R. Evid. 201(c)(2) ............................................................................ 19

Federal Rule of Civil Procedure 12(b)(6)................................. 13, 18, 19, 22, 24, 29

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff David A. Fisher claims that the ABC television series, *mixed-ish*, infringed his five-episode YouTube series titled "MIXED." On November 2, 2021, the Court granted the Motion to Dismiss Plaintiff's Complaint filed by Defendant The Walt Disney Company ("TWDC"). The Court granted Plaintiff leave to amend to allege facts demonstrating that he owns a valid copyright registration for "MIXED" Episodes 2 through 5, and to allege sufficient, non-conclusory facts regarding substantial similarity between "MIXED" Episode 1 and *mixed-ish* to satisfy *Iqbal*'s pleading standards.

Plaintiff's First Amended Complaint for Infringement ("FAC") fails to remedy either of these fatal defects. Plaintiff has not alleged facts demonstrating that he owns valid copyright registrations for "MIXED" Episodes 2, 3, 4, or 5. This Court previously took judicial notice of the U.S. Copyright Office's records, which show that Plaintiff did ***not*** obtain copyright registrations for these works before filing this action, requiring dismissal without leave to amend.

As for "MIXED" Episode 1, Plaintiff has, once again, failed to allege facts plausibly demonstrating substantial similarity with *mixed-ish*. The FAC alleges six vague similarities. However, the FAC does not state that these elements are even present in "MIXED" Episode 1. They are not, as is clear from the Copyright Office's deposit copy of "MIXED" Episode 1, the contents of which are incorporated by reference into the FAC and of which this Court previously took judicial notice. But even if the six elements were actually in "MIXED" Episode 1 and *mixed-ish* (which they are not), they would still be insufficient to plausibly plead that the works are substantially similar in protected expression under the extrinsic test. Plaintiff essentially complains that both works feature a biracial female character who battles stereotypes that biracial people face. But copyright law does not give Plaintiff a monopoly over stories about biracial females. A

comparison of "MIXED" Episode 1 and *mixed-ish* demonstrates there is no substantial similarity as a matter of law.

These defects apply to Plaintiff's claims for copyright infringement against all Defendants, including those not yet served. Plaintiff has had ample opportunity to try to remedy these defects and to state a claim. Plaintiff has failed to (and cannot) do so. Therefore, the FAC should be dismissed as to all Defendants without leave to amend. Furthermore, because Plaintiff's claims lack any arguable basis in law or in fact, the Court should certify in writing that any appeal would not be taken in good faith under 28 U.S.C. § 1915(a)(3).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

### A.   Plaintiff's First Action and Initial Complaint in This Action

On March 3, 2020, Plaintiff filed his first action against TWDC and others, claiming that *mixed-ish* infringed his five-episode series "MIXED" and converted his intellectual property. *See Fisher v. Nissel*, No. 2:20-cv-02088-CBM (KSx). TWDC met and conferred with Plaintiff regarding the deficiencies in his complaint, including his failure to obtain a valid copyright registration and failure to plead substantial similarity. *See* No. 2:20-cv-0088, Dkt. 16-1, ¶6. Plaintiff refused to dismiss his complaint, requiring TWDC to file a motion to dismiss. *Id.*, Dkt. 15. Only then did Plaintiff file a Notice of Voluntary Dismissal of the case without prejudice on July 23, 2020. *Id.*, Dkt. 28.

On July 19, 2021, Plaintiff filed his Complaint in the present action against Angela Nissel, E. Brian Dobbins, Kenya Barris, ABC Studios, TWDC, and Does 1 through 25 (collectively, "Defendants"). *See* Dkt. 1 ("Compl."). Plaintiff once again claimed that *mixed-ish* infringed his five-episode series "MIXED" and converted his intellectual property. Plaintiff also claimed that Defendants falsely represented *mixed-ish*'s origin or authorship.

### B.   The Court's Order Granting TWDC's Motion to Dismiss

On August 26, 2021, after again meeting and conferring with Plaintiff,

TWDC filed a Motion to Dismiss Plaintiff's Complaint in Its Entirety Without Leave to Amend Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B). *See* Dkt. 16 ("Motion to Dismiss the Complaint"). TWDC also filed a Request for Judicial Notice of: (i) the U.S. Copyright Office's records showing that Plaintiff had not obtained copyright registrations for "MIXED" Episodes 2 through 5; (ii) the deposit copy of "MIXED" Episode 1; and (ii) the *mixed-ish* Season 1 episodes as aired. *See* Dkts. 17-18 ("First RJN"). Plaintiff subsequently filed a proof stating that the summons had been served on TWDC on September 15, 2021. *See* Dkt. 22. To date, Plaintiff has not filed a proof of service of process on any other Defendant.

Plaintiff failed to file a timely opposition to the Motion to Dismiss the Complaint. However, the Court afforded Plaintiff another opportunity to file an opposition (Dkt. 23), which Plaintiff did on October 4, 2021 (Dkt. 24).

On November 2, 2021, at 10:00 a.m., the Court held a telephonic hearing on TWDC's Motion to Dismiss the Complaint. After the Court heard from both sides, it granted the motion as well as TWDC's request for judicial notice. *See* Dkt. 30. The Court dismissed the conversion and false representation claims without leave to amend. *See id.* at 1, 2. It dismissed the copyright infringement claim based on "MIXED" Episodes 2 through 5 "with leave to amend to allege facts demonstrating Plaintiff owns a valid copyright registration for Episodes 2, 3, 4 and 5[.]" *Id.* at 1. It dismissed the copyright infringement claim based on "MIXED" Episode 1 "with leave to amend to allege sufficient, non-conclusory facts regarding substantial similarity[.]" *Id.* The Court granted Plaintiff thirty days—until December 2, 2021—to file an amended complaint. *See id.* at 2.

### C.    Plaintiff's First Amended Complaint for Infringement

Plaintiff filed the "First Amended Complaint for Infringement" on December 2, 2021. *See* Dkt. 31 ("FAC").

In his initial Complaint, Plaintiff alleged that he "premiered the MIXED

comedy series (5 episodes) on the YouTube Channel . . ." commencing on March 25, 2014. Compl. ¶1. In the FAC, Plaintiff characterizes the five episodes as the "Pilot." FAC ¶25. With respect to copyright registration, Plaintiff alleges merely:

> Plaintiff's ownership of '*Pilot*' episodes 1 thru 5, on March 25, 2014, is memorialized in U.S. Copyright PA 2-265-745, when the Plaintiff affixed and captured his original expression in a tangible medium. The ownership by the Plaintiff of this original work was also recognized by the Screen Actors Guild registration in 2013 and Writers Guild of America registration 2010. SAG-AFTRA registration was under production number 00350437, as well as the WGA registration under registration number 1446026. Moreover, on or about January 5, 2014, "MIXED" was created as a 30-minute episode presented in the tangible medium on Vimeo.com and fisherthoughts.com. Smaller segments of "MIXED" represented in episodes 2-5, were presented on YouTube, as it was later segmented and thereby derived from the 30 minutes pilot of "MIXED".

*Id.*

As to substantial similarity, Plaintiff asserts that "[t]his case is about the Walt Disney Company's ('TWDC') willful infringement of Plaintiff's original copyrighted expression of themes, settings, dialogue, characters, plot, mood, sequence of events contained in an original television series entitled '**MIXED'** and The Walt Disney Company's creation of television series entitled '**MIXED-ISH.**'" FAC at p. 1. Plaintiff alleges that "MIXED" involves "a bi-racial conservative girl named Samantha Hoffman who moves back home after obtaining her Master's Degree and works for her liberal mother." *Id.* ¶37. Besides that one-line description, however, Plaintiff does not address the theme, setting, dialogue, characters, plot, mood, sequence of events, or pace of "MIXED" Episode 1 or *mixed-ish*. Instead, in paragraph 37, Plaintiff alleges similarities in six randomly selected elements, which on their face are not similar in expression:

> a. Samantha has an interracial relationship with the high school sweetheart (who is white) but begins dating her parents' client who is black. **In "MIXED-ISH" Rainbow has a white boyfriend (her**

**teenage sweetheart) but gets a crush on her parents' mentee (who is black).**

b. Samantha's cousin is teaching Samantha how to embrace being black, subsequently parents are contemplating divorce, and she is forced to move into her grandparents' house in an impoverished neighborhood and her cousin with newfound friends continue to teach her how to embrace being black. **In "MIXED-ISH", Rainbow's parents move from an impoverished neighborhood to her divorced grandfather's house in an affluent neighborhood where her aunt teaches her how to embrace being black.**

c. In the Pilot episode Samantha battles biracial stereotypes, i.e. doesn't have black friends, feels uncomfortable in social situations with black people and white people who believes that she is able to dance because she is black but she could not dance, believed by her white counterparts to be an affirmative action hire. **In "MIXED-ISH", Rainbow is battling stereotypes as a bi-racial girl (whites making assumptions that she is going to be a better athlete on track team-faster). A teacher makes a comment about her natural hairstyle and tells her to make it neat for picture day. Rainbow goes to dance with white boyfriend and expected to be able to dance because she is black, but she can't dance.**

d. Samantha is a church going Christian (post-college and graduate school) attending a predominantly white church and parents and cousin Tracy and friend Alice (both black) make fun of her church going and Christian values. **In "MIXED-ISH", Rainbow is a freshman in high school and develops a sudden interest in church (goes to predominantly white church) and her parents disapprove, while black friends make fun of her for believing that Jesus is White.**

e. Samantha goes on a date with Tariq (black gentleman), turns to her black friends and family for advice on dating, sex, and life but she ends up discussing politics with Tariq who is not a Republican. **In "MIXED-ISH", Rainbow goes on her first date at the school danc [sic], her friends give her advice, and she is nervous but ends up fighting over politics.**

f. Samantha is a virgin in "MIXED", but her parents are alright with her having sex before marriage, AND encourage positive body image. However, she is conflicted about having sex before marriage as a

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

Christian, but attempts with her white boyfriend in her bedroom. **In "MIXED-ISH, Rainbow is a virgin. Parents have conversation about sex, Parents tell her that it is alright to have a boy in her bedroom. It is alright to have pre- marital sex in the process of stating that it is alright to have a boy in the bedroom. Educate her about contraception and encourage positive body image.**

*Id.* Plaintiff does not allege that the referenced parts of "MIXED" are in Episode 1.

The FAC, like the Complaint, contains no facts regarding TWDC's alleged access to "MIXED" or involvement with *mixed-ish*. Plaintiff alleges merely that TWDC wholly owns Disney ABC Studios. *See* FAC ¶¶11, 12.

**D.    The Works at Issue**

**1.    "MIXED" Episode 1**

The deposit copy for Registration number PA 2-265-745 (First RJN, Ex. F) consists of "MIXED" Episode 1, which is about 6 minutes in length, and a one-page synopsis. As stated in the synopsis, "MIXED" "is a single-camera comedy about Samantha Hoffman (Vanessa Simmons), a bi-racial conservative who moves back home with her liberal parents after obtaining her master's degree."

Episode 1 opens with interviews of Samantha and her parents, Florence and Frank. To her father's dismay, Samantha declares that just because she is African-American does not mean she has to vote "Democrat"—or as she calls them, "libertards." Samantha explains to the camera that she is a conservative; she wants her taxes low, loves the Lord, and plans to abstain from sex until marriage.

In the next scene, Frank, Samantha, and Florence arrive in the parking lot of Florence's entertainment agency. Florence is a top agent, and Samantha is now reluctantly going to be working for her. Samantha disapproves of her mother's wild ways, remarking that the last thing she remembers is Florence trying to convince her to take a tequila shot off Florence's navel.

There is immediate hatred between Samantha and Florence's assistant, Amy. Amy tells the camera she is not threatened by Samantha because Samantha is

1   Black and the town is supposed to be run by white liberal women like Amy.

2   Samantha claims to Amy that she has tons of valuable work experience, but a

3   flashback reveals that this experience consists of working on Romney's 2012

4   campaign. The flashback shows the campaign team leader referring to women as

5   "ovaries" and to Samantha as "Beyoncé," but Samantha does not seem to mind.

6       Amy is interested in a new coworker, Milton Sneed. It turns out that

7   Samantha knows Milton from a long time ago, and Florence—who thinks her

8   daughter needs to have fun—has hired him specifically for Samantha. However,

9   Samantha thinks of Milton as a brother and says that she is interested in success,

10   not romance. Episode 1 ends with interviews of Samantha and her parents, in

11   which Samantha comments that she does not believe in Obamacare.

12              **2.    *mixed-ish***

13       *Mixed-ish* tells the story of a girl named Rainbow "Bow" Johnson, her two

14   younger siblings Johan and Santamonica, and their parents Paul and Alicia.

15       The pilot episode (First RJN, Ex. H, Ep. 101), titled "Becoming Bow,"

16   opens with Bow as an adult with her husband and children. Bow's husband wants

17   the kids to watch a 1980s movie called *Breakin'*. Bow has never seen it, which

18   leads to talk about her upbringing in a commune. Her husband asks how she ever

19   survived her childhood. The question prompts a shift to 1985, when Bow is twelve

20   years old and living blissfully in the commune where racism and sexism do not

21   exist. However, that summer, her life changes forever when the commune is raided

22   by the government, and the family has to move into a rental property owned by

23   Paul's father Harrison in the "real world" of Reagan-era America.

24       Bow's idealistic hippie parents, Paul and Alicia, tell the children that if they

25   stay true to who they are, they won't even notice they have left the commune. To

26   support the family, Alicia, who has a law degree, aspires to look for a firm where

27   she can try meaningful cases, and Paul wants to grow food to sell. Meanwhile, the

28   three kids go to their new school. They discover that the cafeteria is divided into

1   two sides—"Black Kids" and "White Kids"—and are confronted with the question,

2   "What are you weirdos mixed with?" They learn from their parents that having a

3   white dad and a Black mom is not necessarily the norm. Alicia's sister Denise

4   thinks that Alicia and Paul are not preparing the kids well for the real world.

5   Alicia, Johan, and Santamonica decide to adapt. Alicia joins the plaintiff-

6   side law firm owned by Harrison. Johan dresses like a B-boy and joins the "Black

7   table," while Santamonica dresses like Madonna and joins the "White table." Bow

8   and Paul become upset with these changes. But Alicia tells Paul that whereas he

9   can be the way he is anywhere in the world, she cannot do that because outside the

10  commune, she is a Black woman. Paul realizes he has been holding Bow back, and

11  that they need to adapt, too. Paul and Alicia tell Bow that whatever she does, they

12  will not think she is giving up on either of them.

13  Over the course of the season, the Johnson family learns to thrive in their

14  new world outside the commune, while keeping true to their progressive values.

15  For example, in Episode 2, Bow creates her own cafeteria table with her younger

16  siblings and a Latina classmate she befriends.

17  Season 1 consists of 23 episodes, each about 20 minutes long. *See* First RJN,

18  Ex. H. TWDC has also submitted the Second 2 episodes referenced in the FAC as

19  Exhibit I to its Request for Judicial Notice filed herewith ("Second RJN").

20  ## III.   LEGAL STANDARDS

21  A complaint must be dismissed pursuant to Rule 12(b)(6) unless it provides

22  sufficient facts that, if "accepted as true, . . . 'state a claim to relief that is plausible

23  on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

24  *v. Twombly*, 550 U.S. 544, 570 (2007)). A claim must also be dismissed if it is not

25  legally viable. *See id.* at 676-77, 682-83 (claim of supervisory liability failed as a

26  matter of law); *see Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534

27  (9th Cir. 1984) ("A complaint may be dismissed as a matter of law for one of two

28  reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002

18

1 cognizable legal claim.").

2     In ruling on a motion to dismiss, "courts *must* consider the complaint in its

3 entirety, ***as well as*** other sources courts ordinarily examine when ruling on Rule

4 12(b)(6) motions to dismiss, in particular, documents incorporated into the

5 complaint by reference, and matters of which a court may take judicial notice."

6 *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (emphases

7 added), *cited in Dunn v. Castro*, 621 F.3d 1196, 1205 n. 6 (9th Cir. 2010); *see also*

8 Fed. R. Evid. 201(c)(2) (a court "*must* take judicial notice if a party requests it and

9 the court is supplied with the necessary information") (emphasis added).

10 Furthermore, the court "need not . . . accept as true allegations that contradict

11 matters properly subject to judicial notice or by exhibit" or "allegations that are

12 merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

13 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended*

14 *on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

15     When, as here, a plaintiff is proceeding *in forma pauperis*, "the court *shall*

16 dismiss the case *at any time* if the court determines that . . . the action or appeal—

17 (i) is frivolous or malicious; [or] (ii) fails to state a claim on which relief may be

18 granted . . . ." 28 U.S.C. § 1915(e)(2)(B) (emphases added). Thus, the court may

19 dismiss the action even "before service of process." *Rosado v. Roman*, 2017 WL

20 3473177, at *7 (D. Or. Aug. 11, 2017) (dismissing copyright infringement claim

21 for failure to state a claim as to "all Defendants, served and unserved"). The

22 pleading standard to avoid dismissal under § 1915(e)(2)(B)(ii) is similar to that of

23 Rule 12(b)(6). *See Suess v. Obama*, 2017 WL 1371289, at *1 (C.D. Cal. Mar. 10,

24 2017). A claim is frivolous if it "lacks an arguable basis either in law or in fact."

25 *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

26 **IV.  PLAINTIFF'S CLAIM BASED ON "MIXED" EPISODES 2-5**

27       **SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND**

28 Plaintiff's claim for copyright infringement of "MIXED" Episodes 2 through

13788215.2/50452-00002
**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

1    5 should be dismissed because Plaintiff has again failed to allege facts

2    demonstrating that he owns valid copyright registrations for these works. Dismissal

3    should be without leave to amend because Plaintiff cannot cure this defect through

4    post-filing registrations and further amendment.

5         A copyright plaintiff "must plausibly allege [he] owns a valid copyright

6    registration for [his] work." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d

7    946, 951 (9th Cir. 2019). This is a precondition for commencing an infringement

8    action because the Copyright Act provides, with certain exceptions inapplicable

9    here, that "no civil action for infringement of the copyright in any United States

10   work shall be instituted until preregistration or registration of the copyright claim

11   has been made in accordance with this title." 17 U.S.C. § 411(a).

12        In the FAC, Plaintiff alleges that his ownership of "MIXED" Episodes 1

13   through 5 is "memorialized" in PA 2-265-745—the same registration number cited

14   in the Complaint. FAC ¶25; *see* Compl. ¶¶1, 19, 40. However, the Copyright

15   Office's records definitively establish what it has registered, and what it has not.

16   *See* 17 U.S.C. § 410. Those records, of which the Court has taken judicial notice,

17   establish that PA 2-265-745 covers only "MIXED" Episode 1, which is about 6

18   minutes in length. *See* First RJN, Exs. A-G. The records establish that the

19   Copyright Office did ***not*** grant registrations for Episodes 2 through 5. *Id.*

20        The FAC repeats the same unavailing assertions that Plaintiff made in his

21   Opposition to the Motion to Dismiss the Complaint. Plaintiff alleges that he

22   created "MIXED," and that it was initially a 30-minute episode and only later

23   segmented into five episodes. *Compare* FAC ¶25, *with* Dkt. 24 at 4-5. Plaintiff

24   again alleges that he registered something with the Screen Actors Guild and

25   Writers Guild of America. *Compare* FAC ¶25, *with* Dkt. 24 at 5. But whether or

26   not Plaintiff owns rights in "MIXED" and whether or not he initially created it as a

27   30-minute episode, Plaintiff cannot maintain an infringement claim based on

28   Episodes 2 through 5 because he did not obtain copyright registrations for these

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002

20

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

episodes before filing this lawsuit. As the Supreme Court explained in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, "although an owner's rights exist apart from registration, . . . registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." 139 S. Ct. 881, 887 (2019) (citation omitted).

Plaintiff cannot cure this defect by now obtaining registrations and further amending. "[P]ermitting amendment to cure a claimant's failure to register its copyright before suing would undermine the objectives animating the Supreme Court's decision in *Fourth Estate*," and is contrary to 17 U.S.C. § 411(a)'s requirement that registration be made before instituting the action. *Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019).[1]

Accordingly, Plaintiff's claim for copyright infringement of "MIXED" Episodes 2 through 5 should be dismissed without leave to amend.

# V. PLAINTIFF'S CLAIM BASED ON "MIXED" EPISODE 1 SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

## A. Plaintiff Has Again Failed to Plead Substantial Similarity

Plaintiff's claim based on "MIXED" Episode 1 should be dismissed because he has again failed to allege facts regarding substantial similarity sufficient to satisfy *Iqbal*'s standards. Plaintiff alleges six random similarities between the works. However, Plaintiff does not state that these elements are even present in "MIXED" Episode 1 (as opposed to an unregistered episode or other work). The Copyright Office's deposit copy shows that they are not in Episode 1. Moreover, the contents of *mixed-ish*, which are part of the FAC by incorporation and

---

[1] *See also UAB "Planner 5D" v. Facebook, Inc.*, 2019 WL 6219223, at *7 (N.D. Cal. Nov. 21, 2019) ("A plaintiff cannot cure its failure to meet the preconditions set forth in 17 U.S.C. § 411(a) by amending its pending complaint."); *Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*, 2019 WL 9050859, at *2 (C.D. Cal. Aug. 5, 2019) (plaintiff who filed suit before obtaining a copyright could not "cure that defect by amending the complaint *after* the Copyright Office completed registration of the copyright"); *Malibu Media, LLC v. Doe*, 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019) ("a prematurely filed suit must be dismissed notwithstanding a plaintiff's post-registration amendment").

judicially noticeable, refute Plaintiff's mischaracterizations. But even if the six elements were actually in both "MIXED" Episode 1 and *mixed-ish* (which they are not), they would still be insufficient to "show that [Defendants] copied enough of ["MIXED" Episode 1's] protected expression to render the[] works 'substantially similar.'" *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). The FAC ignores the actual protectable expression of the works under the extrinsic test, and instead alleges similarities in general concepts such as a biracial female character dating or having crushes on men or boys of different races, and battling stereotypes that biracial people face. Plaintiff's claim does not have facial plausibility because the allegations do not allow the Court to "draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

To state a claim for copyright infringement, Plaintiff must, *inter alia*, allege facts to show not only appropriation, but unlawful appropriation. *Rentmeester*, 883 F.3d at 1117. For unlawful appropriation, "the similarities between the two works must be 'substantial' and they must involve protected elements of the plaintiff's work." *Id.* In *Rentmeester*, the Ninth Circuit considered "whether [the plaintiff] ha[d] plausibly alleged that [the defendant] had copied enough of the protected expression from [plaintiff's] photo to establish unlawful appropriation." *Id.* at 1118. In conducting the Rule 12(b)(6) inquiry, the court applied the extrinsic test, which assesses the "*objective details* of the works," "focusing only on the protectable elements of the plaintiff's expression." *Id.* (emphasis added); *see id.* ("Only the extrinsic test's application may be decided by the court as a matter of law, so that is the only test relevant in reviewing the district court's ruling on a motion to dismiss.") (citation omitted). "The extrinsic test ignores 'basic plot ideas' but instead 'focuses on 'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two

1    works." *Washington v. ViacomCBS, Inc*, 2021 WL 2640105, at *2 (C.D. Cal. May

2    21, 2021) (Marshall, J.).

3        The FAC fails to adequately plead unlawful appropriation for several

4    reasons. First, the FAC does not allege that the six elements are even in "MIXED"

5    Episode 1. They are not. As the Copyright Office's deposit copy establishes,

6    "MIXED" Episode 1 only shows Samantha's first day on the job at her mother's

7    agency. *See supra*, Section II.D.1; First RJN, Ex. F. The FAC also

8    mischaracterizes *mixed-ish* episodes, as discussed below. The court "need not . . .

9    accept as true" Plaintiff's inaccurate allegations, which "contradict matters

10   properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 988; *see*

11   *Peter F. Gaito Arch., LLC v. Simone Dev. Corp*., 602 F.3d 57, 64 (2d Cir. 2010)

12   ("In copyright infringement actions, the works themselves supersede and control

13   contrary descriptions of them, including any contrary allegations, conclusions or

14   descriptions of the works contained in the pleadings.") (citation and quotations

15   omitted).[2]

16       Second, the FAC fails to allege substantial similarity under the extrinsic test.

17   The FAC does not allege or compare the protectable elements of the plot, theme,

18   dialogue, mood, setting, pace, characters, and sequence of events of "MIXED"

19   Episode 1 and any particular episode of *mixed-ish.* Instead, Plaintiff alleges six

20   random similarities, without identifying which episodes supposedly contain the

21   elements and without describing how those elements are supposedly arranged in a

22   substantially similar way within the works.[3] That is not sufficient. *See Wild v. NBC*

23

24   [2] *E.g., Levi v. Strong*, 2019 WL 3293240, at *10 (C.D. Cal. May 9, 2019) (12(b)(6) dismissal; holding that plaintiff's allegations mischaracterized the works), *aff'd*,
25   812 F. App'x 713 (9th Cir. 2020); *Esplanade Prods., Inc. v. Walt Disney Co*., 2017 WL 5635027, at *10, 14 (C.D. Cal. Nov. 8, 2017) (same), *aff'd*, 768 F. App'x 732
26   (9th Cir. 2019); *Abdullah v. Walt Disney Co*., 2016 WL 5380930, at *5-6 (C.D. Cal. Mar. 14, 2016) (same), *aff'd*, 714 F. App'x 758 (9th Cir. 2018); *Shame On*
27   *You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1154 (C.D. Cal. 2015) (same), *aff'd*, 690 F. App'x 519 (9th Cir. 2017).

28   [3] As discussed *infra*, Plaintiff points to isolated elements allegedly in two *mixed-ish* Season 1 episodes (101 and 105) and three Season 2 episodes (203, 204, and 207).

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002      **MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

*Universal, Inc*., 513 F. App'x 640, 641-42 (9th Cir. 2013) (12(b)(6) dismissal; the alleged similarities between various scenes from plaintiff's three-part graphic novel and defendant's television series "constitute nothing more than 'random similarities scattered throughout the works' that are insufficient to support a claim of substantial similarity") (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984)); *Evans v. McCoy-Harris*, 2019 WL 1002512, at *3 (C.D. Cal. Jan. 4, 2019) (dismissing claim where plaintiff failed to "compare the copyrightable elements of" the defendant's work with her works).

Third, even if the six elements were actually in both "MIXED" Episode 1 and *mixed-ish* (which they are not), they do not plausibly plead that the "similarities between the two works [are] 'substantial'" or that they "involve protected elements of the plaintiff's work." *Rentmeester*, 883 F.3d at 1117. For example, in *Masterson v. Walt Disney Co*., 821 F. App'x 779 (9th Cir. 2020), the Ninth Circuit affirmed a Rule 12(b)(6) dismissal because "it [wa]s not plausible that [the works] have any substantial similarity under the extrinsic test." *Id.* at 792. This was so, even though both works had the general theme that every feeling has a reason; involved a journey through childhood emotions; included anthropomorphized characters embodying the emotions joy, sadness, fear, and anger; had a crying character whose tears fall on flowers and a cloud-like character; and associated friendship with the color purple and arch shapes. *See id.*

Similarly, in *Washington v. ViacomCBS*, 2021 WL 2640105, this Court dismissed a copyright infringement claim without leave to amend where the plaintiff alleged that both works involved protagonists who (1) had similar names (Sadie Williamson and Sadie Williams); (2) were young African-American social media influencers who specialized in the specific niche of beauty and suffered in silence from a mental illness; (3) started their careers from humble beginnings and turned their social media following into a powerful brand; (4) faced a conflict in their careers, which served as a pivotal moment of both works; and (5) had

controlling business managers who threatened the integrity of Sadie's brand. *See id.* at *2, As this Court explained, such similarities in "name, occupation, ethnicity, mental illness, and background" were insufficient to allege that the works were substantially similar under the extrinsic test. *Id.* at *3.

Plaintiff's alleged similarities are even more sparse and concern basic ideas. The FAC's general descriptions omit most of "the objective details" of the actual works. *Rentmeester*, 883 F.3d at 1118. But even those vague allegations show that the purportedly similar ideas are expressed very differently in the respective works:

(1) Plaintiff alleges that in both works, the protagonist has a relationship with a white male, and then has some kind of relationship with someone associated with her parents who is Black. *See* FAC ¶37.a. According to Plaintiff, however, in "MIXED," Samantha Hoffman—a woman with a Master's degree (*see id.* ¶37)—has a relationship with her high-school sweetheart and then later begins dating her parents' client. Plaintiff does not allege that in *mixed-ish*, Rainbow Johnson—a young girl (*see id.* ¶37.c.)—has a relationship with a man who used to be her teenage sweetheart but then dates her parents' client, but rather, that she has a young boyfriend and then has a "crush" on her parents' "mentee."[4]

(2) Plaintiff alleges that in both works, someone is either contemplating divorce or is divorced, someone moves either into or out of an impoverished neighborhood, and someone teaches the protagonist how to embrace being Black. Plaintiff's allegations show there is no similarity in how these general concepts are expressed. *See* FAC ¶37.b. According to Plaintiff, in "MIXED," Samantha's parents are contemplating divorce, she moves into her grandparents' house in an impoverished neighborhood, and her cousin and newfound friends teach her how to embrace being Black. In contrast,

---

[4] Rainbow develops a one-sided teenage crush on Paul's student who comes to live with the family, and never dates him. *See* Second RJN, Ex. I (Ep. 203, 00:46-58, 20:37-21:24).

1  Plaintiff alleges that in *mixed-ish*, Rainbow's grandfather is divorced, her

2  parents moves into her grandfather's house in an affluent neighborhood, and

3  her aunt teaches her how to embrace being Black.[5]

4  (3)  Plaintiff alleges that in both works, the protagonist battles stereotypes. *See*

5  FAC ¶37.c. But beyond the stereotype that they can dance,[6] the stereotypes

6  that Plaintiff alleges Samantha and Rainbow face are different, which stem

7  from their very different situations. Plaintiff alleges that in "MIXED,"

8  Samantha "doesn't have black friends" and is "believed by her white

9  counterparts to be an affirmative action hire." *Id.* In contrast, Plaintiff

10  alleges that in *mixed-ish*, "Rainbow is battling stereotypes as a bi-racial girl

11  (whites making assumptions that she is going to be a better athlete on track

12  team-faster). A teacher makes a comment about her natural hairstyle and

13  tells her to make it neat for picture day." *Id.*

14  (4)  Plaintiff alleges that in both works, the protagonist goes to church. *See* FAC

15  ¶37.d. However, whereas Samantha in "MIXED" is a strong and

16  longstanding Christian (in line with her conservative political views),

17  Plaintiff alleges that in *mixed-ish*, Rainbow "develops a sudden interest in

18  church." *Id.* Plaintiff does not allege that Rainbow's parents and friends

19  "make fun of her church going and Christian values" as Samantha's liberal

20  parents and friends do, but rather, that Rainbow's parents disapprove and

21  that her friends "make fun of her for believing that Jesus is White." *Id.*[7]

---

22  [5] Plaintiff mischaracterizes *mixed-ish*. In fact, Rainbow's parents do not move out

23  of an impoverished neighborhood, but out of a utopian commune. *See* First RJN, Ex. H (Ep. 101, 2:04-4:01).

24  [6] In fact, there is no indication that anyone expects Rainbow to be able to dance. *See* First RJN, Ex. H (Ep. 105, 20:04-41).

25  [7] In *mixed-ish*, Rainbow does not regularly attend church, and does not attend a

26  predominantly white church. She and her family visit a predominantly Black church. *See* Second RJN, Ex. I (Ep. 204, 7:36-8:27). Also, Bow's friends do not

27  make fun of her for believing that Jesus is white; rather, they can't believe Bow's parents won't let her go to church. *Id.* (Ep. 204, 4:04-5:08). And Bow's hippie parents do not like organized religion, but her mother Alicia ends up re-embracing

28  her faith. *Id.* (Ep. 204, 0:00-2:35, 11:37-12:40).

(5) Plaintiff alleges that in both works, the protagonist goes on a date, asks her friends or family for advice, and politics comes up in some way. *See* FAC ¶37.e. However, as Plaintiff alleges, in "MIXED," Samantha goes on a date with a Black gentleman named Tariq, "turns to her black friends and family for advice on dating, sex, and life," but "ends up discussing politics with Tariq who is not a Republican." *Id.* In contrast, Plaintiff alleges that Rainbow goes on her first date to the school dance (with a white classmate, *see id.* ¶37.a.), asks her young friends (not her "black friends and family," *id.* ¶37.e) for advice about asking the boy to the dance, and "she is nervous but ends up fighting over politics" (not that she "ends up discussing politics with [the boy] who is not a Republican").[8]

(6) Plaintiff alleges that in both works, the protagonist is a virgin but her parents encourage positive body image. *See* FAC ¶37.f. But as Plaintiff alleges, in "MIXED," Samantha is a religious, conservative woman who "is conflicted about having sex before marriage as a Christian," in tension with her parents who are "alright with her having sex before marriage" and think Samantha is too conservative. *Id.* Plaintiff does not allege that Rainbow is conflicted about having sex, and her parents allegedly having a "conversation about sex" with her, "[e]ducat[ing] her about contraception," and "tell[ing] her that it is alright to have a boy in her bedroom" is not substantially similar to Samantha's parents wanting her to have sex as a twenty-something woman.[9]

In sum, Plaintiff has failed to allege facts that plausibly plead that *mixed-ish* unlawfully appropriated protected expression from "MIXED" Episode 1.

## B.      Plaintiff's Claim Should Be Dismissed Without Leave to Amend

---

[8] In fact, Rainbow does not discuss or fight over politics with the boy at the school dance. *See* First RJN, Ex. H (Ep. 105, 18:31-19:37).

[9] In *mixed-ish*, Rainbow's parents do not want her to have sex; her mother nervously waits outside Bow's door. *See* First RJN, Ex. I (Ep. 207, 9:02-59). Bow's parents end up implementing rules against having boys in her bedroom. *Id.* (Ep. 207, 19:26-35).

Mitchell Silberberg & Knupp LLP

13788215.2/50452-00002

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

1    Despite this Court's specific instructions, Plaintiff has once again failed to

2    plead substantial similarity. Further leave to amend should not be granted. *See*

3    *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) ("Where the

4    plaintiff has previously filed an amended complaint, . . . the district court's

5    discretion to deny leave to amend is '"particularly broad."').

6    Any further attempt at amendment would be futile. The elements identified

7    in paragraph 37 of the FAC, on which Plaintiff bases his claim, are not in

8    "MIXED" Episode 1. In that episode, Samantha has her first day of work at her

9    mother's agency. She does not date Milton, date her mother's client Tariq, move

10   into her grandparents' house, dance, or go to church.

11   Moreover, a comparison of the works shows that *mixed-ish* is not

12   substantially similar to "MIXED" Episode 1 as a matter of law. As the Ninth

13   Circuit held in *Rentmeester*, it is proper for the court to compare the works at the

14   pleading stage, and to dismiss an infringement claim with prejudice where that

15   comparison shows that the works are not substantially similar under the extrinsic

16   test. *See* 883 F.3d at 1123, 1125 (holding that "[d]ismissal is appropriate here

17   because the [works] are properly before us and thus 'capable of examination and

18   comparison,'" and that "amending the complaint would . . . be[] futile"). *See also*

19   *Christianson v. W. Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945) ("There is ample

20   authority for holding that when the copyrighted work and the alleged infringement

21   are both before the court, capable of examination and comparison, non-

22   infringement can be determined on a motion to dismiss."); *Gadh v. Spiegel*, 2014

23   WL 1778950, at *3 (C.D. Cal. Apr. 2, 2014) ("For fifty years, courts have followed

24   this rather obvious principle and dismissed copyright claims that fail from the face

25   of the complaint (and in light of all matters properly considered on a motion to

26   dismiss).").[10]

27
---
28   [10] *See also, e.g., Masterson v. Walt Disney Co.*, 2019 WL 2879877 (C.D. Cal. May 8, 2019), *aff'd*, 821 F. App'x 779, 780-81 (9th Cir. 2020) (book/script and film;

1    Unlike in *Alfred v. Walt Disney Co.*, 821 F. App'x 727 (2020), here, Plaintiff

2  has not alleged similarities in the selection and arrangement of various elements.

3  *See id.* at 729. Nor does this case turn on whether the elements are generic tropes,

4  or involve a situation where "the works in question are almost twenty years old and

5  [the defendant's] blockbuster [] film franchise may itself have shaped what are

6  now considered pirate-movie tropes." *Id.* And unlike in *Alfred*, Plaintiff has not

7  argued that he would offer any expert testimony. *See id.*

8    In any event, as the Ninth Circuit explained in *Masterson v. Walt Disney*

9  *Co.*, 821 F. App'x 779, "determining substantial similarity does not necessarily

10 require expert testimony." *Id.* at 781. On a Rule 12(b)(6) motion, "the court is

11 required to determine whether the complaint states a plausible claim." *Id.* "This is

12 'a context-specific task that requires the reviewing court to draw on its judicial

13 experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). As such:

14 _____

15 "[t]he district court did not err by considering substantial similarity in a motion to
dismiss even though the works at issue are literary works" and without expert

16 discovery); *Astor-White v. Strong*, 2019 WL 3017684 (C.D. Cal. June 14, 2019),
*aff'd*, 817 F. App'x 502 (9th Cir. 2020) (treatment and television series);

17 *Esplanade Prods., Inc. v. Walt Disney Co.*, 2017 WL 5635027 (C.D. Cal. Nov. 8,
2017), *aff'd*, 768 F. App'x 732 (9th Cir. 2019) (treatment/artwork and film);

18 *Fillmore v. Blumhouse Prods., LLC*, 2017 WL 4708018 (C.D. Cal. July 7, 2017),
*aff'd*, 771 F. App'x 756 (9th Cir. 2019) (manuscript and film); *Abdullah v. Walt*

19 *Disney Co.*, 2016 WL 5380930 (C.D. Cal. Mar. 14, 2016), *aff'd*, 714 F. App'x 758
(9th Cir. 2018) (book and film); *Shame On You Prods., Inc v. Elizabeth Banks*, 120

20 F. Supp. 3d 1123 (C.D. Cal. 2015), *aff'd*, 690 F. App'x 519 (9th Cir. 2017)
(screenplay and film); *Silas v. Home Box Off., Inc.*, 201 F. Supp. 3d 1158 (C.D.

21 Cal. 2016), *aff'd*, 713 F. App'x 626 (9th Cir. 2018) (screenplay and television
show); *Edwards v. Cinelou Films, LLC*,  2016 WL 9686986 (C.D. Cal. June 22,

22 2016), *aff'd*, 696 F. App'x 270 (9th Cir. 2017) (script/trailer and film); *Heusey v.
Emmerich*, 2015 WL 12765115 (C.D. Cal. Apr. 9, 2015), *aff'd*, 692 F. App'x 928

23 (9th Cir. 2017) (screenplay and film); *Basile v. Sony Pictures Entm't Inc.*, 2014
WL 12521344 (C.D. Cal. Aug. 19, 2014), *aff'd*, 678 F. App'x 473 (9th Cir. 2017)

24 (literary/artistic works and film); *Schkeiban v. Cameron*, 2012 WL 5636281 (C.D.
Cal. Oct. 4, 2012), *aff'd*, 566 F. App'x 616 (9th Cir. 2014) (book/screenplay and

25 film); *White v. Twentieth Century Fox Corp.*, 2012 WL 13008330 (C.D. Cal. Apr.
11, 2012), *aff'd*, 572 F. App'x 475, 477 (9th Cir. 2014) (screenplay and

26 films/television; claim failed despite over 100 alleged similarities); *Van v.
Cameron*, 2011 WL 13121346 (S.D. Cal. Sept. 26, 2011), *aff'd*, 566 F. App'x 615

27 (9th Cir. 2014) (novel and film); *Wild v. NBC Universal, Inc.*, 2011 WL 13272427
(C.D. Cal. June 28, 2011), *aff'd*, 513 F. App'x 640 (9th Cir. 2013) (graphic novel
and television series); *Thomas v. Walt Disney Co.*, 2008 WL 425647 (N.D. Cal.

28 Feb. 14, 2008), *aff'd*, 337 F. App'x 694 (9th Cir. 2009) (literary work and film).

1        there will be times when the court finds it plausible that two works are
2        substantially similar and that expert testimony could be helpful. But
        there will also be times where the court's "judicial experience and
3        common sense" shows that the claims are not plausible and that a
4        comparison of two works creates no more than a "mere possibility of
        misconduct." In this regard, literary works do not receive special
5        treatment.

6 *Id.* Here, a comparison of the works shows that *mixed-ish* is not substantially

7 similar to "MIXED" Episode 1 under the extrinsic test, and no expert testimony

8 could render Plaintiff's claim plausible:

9      ***Characters.*** Plaintiff's allegations focus on Samantha Hoffman in "MIXED"

10 and Rainbow Johnson in *mixed-ish*. However, "'[t]he bar for substantial similarity

11 in a character is set quite high.'" *Heusey*, 2015 WL 12765115, at *9; *accord Silas*,

12 201 F. Supp. 3d at 1177. Similarities "at the abstract level" are not protectable.

13 *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1078 (9th Cir.

14 2006) ("prodigal son" characters of the two works, "while similar at the abstract

15 level," were markedly different), *overruled on other grounds by Skidmore*, 952

16 F.3d 1051. Traits that "flow naturally from" the plot premise likewise are not

17 protected. *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 626 (9th Cir. 2010),

18 *overruled on other grounds by Skidmore*, 952 F.3d 1051.

19      Samantha Hoffman and Rainbow Johnson are markedly different characters,

20 even on a very basic level. As described in Plaintiff's synopsis, Samantha is "in her

21 early-20s," and "her clothes and manner in public are just as conservative as her

22 political affiliations." First RJN, Ex. F. While "Sam loves her parents," she "finds

23 them annoying, especially her mother who always meddles in her love life and

24 tries to get her to loosen up." *Id.* Rainbow is an entirely different character. She is a

25 pre-teen girl and has no political affiliations. She dresses and thinks like a hippie,

26 having grown up in a commune. She does not find her parents annoying, but has a

27 very close relationship to them, and her parents do not try to meddle in her "love

28 life." *See, e.g.*, First RJN, Ex. H (Ep. 101, 16:32-17:10, 18:43-20:32). Being

1  biracial and having to battle stereotypes as a result are not protectable traits. *See*

2  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 916 (9th Cir. 2010) ("age, race,

3  ethnicity" are "unprotectable ideas"); *Tanksley v. Daniels*, 902 F.3d 165, 175 (3d

4  Cir. 2018) ("an African-American, male record executive" is "unprotectable");

5  *Silas*, 201 F. Supp. 3d at 1179 ("similarities between the two characters (they are

6  both fashionably-dressed, Latin-American women who are cheated on by their

7  football-player lover) are not similarities in *protectible* elements").

8        Plaintiff also ignores the other main characters in "MIXED" Episode 1 who

9  have no alleged counterparts in *mixed-ish*, and vice versa, including Milton Sneed

10 in "MIXED" and Johan, Santamonica, Harrison, and Denise in *mixed-ish*. *See*

11 *Funky Films*, 462 F.3d at 1078-79 (emphasizing that several key characters in

12 defendants' work were "[c]ompletely missing" from plaintiff's"). There is no

13 substantial similarity in characters.

14       **Plot and Sequence of Events.** "In applying the extrinsic test, this court

15 'compares, not the basic plot ideas for stories, but the actual concrete elements that

16 make up the total sequence of events and the relationships between the major

17 characters.'" *Funky Films, Inc.*, 462 F.3d at 1077. Thus, even if two works "share

18 the same basic plot premise" (which is not the case here), the claim fails as a

19 matter of law if "a closer inspection reveals that they tell very different stories."

20 *Benay*, 607 F.3d at 625.[11]

---

22 [11] Thus, in *Benay*, 607 F.3d at 625, the Ninth Circuit held there was no substantial
23 similarity as a matter of law even though both works followed an American war
   veteran who starts in America, travels to Japan in the 1870s, meets the Emperor
24 who is struggling to modernize Japan, and trains the Imperial Army in modern
   Western warfare in order to combat a samurai uprising; also featured a Japanese
25 foil in the form of the leader of the samurai rebellion; and had the protagonist
   suffer a personal crisis and be transformed as a result of his interaction with the
26 samurai). In *Funky Films*, 462 F.3d at 1077-78, 1081, the Ninth Circuit held there
   was no substantial similarity as a matter of law although in both works, a father
27 who operated family-run funeral home dies and the two sons take over; the older
   brother was estranged, initially has no interest, but moves home from a distant city,
28 and is creative in contrast to his younger conservative brother; the business is
   financially fragile; a rival funeral home attempts to take over but fails; and the
   younger brother changes his church affiliation to increase the client base.

Mitchell
Silberberg &
Knupp LLP
13788215.2/50452-00002

31

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

1    There is no substantial similarity in plot or "any detailed sequence of
2  events." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002). As
3  Plaintiff alleges, "MIXED" is about "a bi-racial conservative girl named Samantha
4  Hoffman who moves back home after obtaining her Master's Degree and works for
5  her liberal mother." FAC ¶37. This "basic plot idea[]" is "not protected by
6  copyright law." *Cavalier*, 297 F.3d at 823-24 ("general premise of a child, invited
7  by a moon-type character, who takes a journey through the night sky and returns
8  safely to bed to fall asleep" is not protectable); *see Marcus v. ABC Signature
9  Studios, Inc.*, 279 F. Supp. 3d 1056, 1066 (C.D. Cal. 2017) (allegedly similar plot
10  in the television show *black-ish*—about "an upwardly mobile African American
11  family moving into and living amongst a predominately white neighborhood and
12  the perceptions of the family by and between themselves and their neighbors and
13  co-workers"—is a "'basic plot idea . . . not protected by copyright law'"). In any
14  event, this plot idea is not in *mixed-ish*. Rainbow does not move back home after
15  obtaining her Master's Degree, nor does she work for her mother. The *mixed-ish*
16  series tells the story of a young Rainbow, her two siblings, and their hippie parents,
17  as they move from their commune into the "real world" of Reagan-era America.
18  *Mixed-ish* and "MIXED" Episode 1 tell drastically different stories.

19    **Themes.** Plaintiff does not allege similarity in theme, as there is none. The
20  theme of "MIXED" Episode 1 relates to being a politically conservative African-
21  American. That is not a theme in *mixed-ish*, as neither Bow nor her parents are
22  politically conservative. At any rate, any broad similarity flowing from the topics
23  of politics and race is not protectable. *See Benay*, 607 F.3d at 627 (general themes
24  of "fish out of water" and the clash between modernization and traditions not
25  protectable because they arise naturally from the plot premise).

26    **Dialogue.** Plaintiff does not allege similarity in dialogue, much less the kind
27  of "extended similarity of dialogue needed to support a claim of substantial
28  similarity[.]" *Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1450 (9th Cir. 1988).

*Setting*. Plaintiff does not allege similarity in setting, because the settings of the works are very dissimilar. "MIXED" Episode 1 is set in the 2010s, and takes place at Florence's entertainment agency, apparently in Orange County, California. *Mixed-ish*, on the other hand, is set in the 1980s, and takes place largely at the Johnsons' new home, the children's school, and Harrison's law firm. There is no similarity even in general setting. *See Funky Films*, 462 F.3d at 1080 (general setting of "a contemporary, family-run funeral home" not protectable; the settings were not substantially similar in objective details); *Marcus*, 279 F. Supp. 3d 1056, 1071 (C.D. Cal. 2017) ("Even if both works were set in Los Angeles, this similarity would not be protectable under copyright law."); *see also Carlini v. Paramount Pictures Corp.*, 2021 WL 911684, at *13 (C.D. Cal. Feb. 2, 2021) ("'[C]ommonplace settings such as houses, front yards, offices, restaurants, interiors of cars, and so on,' without more, cannot show substantial similarity.").

*Mood*. The works are substantially different in mood, which the FAC does not address. "MIXED" Episode 1 is not a coming-of-age story, but a story about adults. It is edgy and has no nostalgic feel. In contrast, *mixed-ish* is upbeat, warm, and family-oriented. It has a nostalgic bent, with retrospective narration by Rainbow as an adult looking back fondly her childhood. *See Olson*, 855 F.2d at 1451 (while "[b]oth shows may be broadly described as comic," that is generic and does "not demonstrate substantial similarity").

*Pace.* Plaintiff does not allege similarity in pace, as the works are very different in pace. "MIXED" Episode 1 shows the events of a single day in quick succession. By contrast, *mixed-ish* Episode 1 shows Bow as an adult, her time in the commune, and then the multiple days after the family's move. The episode cuts back and forth between scenes involving different members of the Johnson family. The season covers about a year. *See Shame on You*, 120 F. Supp. 3d at 1161-62 (pace not substantially similar where one work takes place over three days, and the other over a day; in any event, "'[t]he bare concept of a pace that is "fast but not

Mitchell
Silberberg &
Knupp LLP

13788215.2/50452-00002

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**

frenetic" is unprotectable'"").

In sum, *mixed-ish* is not substantially similar to "MIXED" Episode 1 under the extrinsic test. Plaintiff thus cannot state a claim for copyright infringement.

C.    **Plaintiff Has Again Failed to Plead Copying by TWDC**

The claim against TWDC fails for the further reason that Plaintiff has not alleged facts plausibly showing that TWDC "copied protected aspects of" his work. *Rentmeester*, 883 F.3d at 1116-17. Plaintiff does not allege facts demonstrating that TWDC received a copy of "MIXED" Episode 1 or that it was involved in creating *mixed-ish. See Evans v. NBCUniversal Media, LLC*, 2021 WL 4513624, at *5 (C.D. Cal. July 23, 2021) (Marshall, J.) (dismissing claim where complaint did "not allege any facts demonstrating that these entity defendants actually received Plaintiff's screenplay or worked on the infringing film").

VI.   **THE FACT SHOULD BE DISMISSED AS TO ALL DEFENDANTS WITHOUT LEAVE TO AMEND**

A district court may "dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." *Silverton v. Dep't of Treasury of U.S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981). Plaintiff's claims against all Defendants are premised on the assertion that *mixed-ish* infringed the copyrights in "MIXED." Plaintiff's failure to allege ownership of copyright registrations for "MIXED" Episodes 2 through 5, and his failure to plead substantial similarity between Episode 1 and *mixed-ish*, are equally applicable to his claims against the other Defendants. Plaintiff has had a full and fair opportunity to try to address these issues, including in his pleadings, briefing, and oral argument, and he has failed to cure these fatal defects. Indeed, he cannot do so. Accordingly, the Court should dismiss the FAC as to all Defendants without leave to amend. *See Fazio v. Washington Mut. Bank, F.A.*, 713 F. App'x 671, 672 (9th Cir. 2018) (holding that the district court properly dismissed the plaintiffs' claims

1  against certain defendants for failure to allege facts sufficient to state a claim, and

2  also "properly dismissed the [plaintiffs'] claims against the defendants who did not

3  move to dismiss the complaint"); *Ukiru v. Fed. Home Loan Mortg. Corp.*, 602 F.

4  App'x 395 (9th Cir. 2015), *as corrected* (May 15, 2015) (same); *Arnold v.

5  Loancare, LLC*, 2021 WL 325664, at *8 (E.D. Cal. Feb. 1, 2021), *report and

6  recommendation adopted*, 2021 WL 1089885 (E.D. Cal. Mar. 22, 2021) (same).

7  **VII.   THE COURT SHOULD CERTIFY THAT ANY APPEAL MAY NOT**

8  **BE TAKEN *IN FORMA PAUPERIS***

9       Where a claim lacks an arguable basis in either law or fact, the Court may

10  certify in writing that any appeal may not be taken *in forma pauperis* because it

11  would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3) ("An appeal may not

12  be taken in forma pauperis if the trial court certifies in writing that it is not taken in

13  good faith."); *Montgomery v. Kennerly*, 2013 WL 1209935, at *3 (D. Mont. Mar.

14  4, 2013) (noting that the good faith standard is "an objective one"), *report and

15  recommendation adopted*, 2013 WL 1210562 (D. Mont. Mar. 25, 2013).

16       For the reasons discussed, Plaintiff's claims lack an arguable basis in fact

17  and law. The Court should certify that any appeal would not be taken in good faith.

18  **VIII.  CONCLUSION**

19       For the foregoing reasons, Plaintiff's FAC should be dismissed in its

20  entirety, as to all Defendants, without leave to amend. TWDC also respectfully

21  requests that the Court certify that any appeal would not be taken in good faith and

22  may not be taken *in forma pauperis* under 28 U.S.C. § 1915(a)(3).

23  DATED: December 16, 2021          MITCHELL SILBERBERG & KNUPP LLP

24

25                                    By:  /s/ Elaine K. Kim
                                          Elaine K. Kim
26                                        Attorneys for Defendant
                                          The Walt Disney Company

27

28

**MOTION TO DISMISS FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**